# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA (FT. LAUDERDALE)

### Case No. 0:19-cv-60752-RAR – Ruiz

BRENDA BELL, individually and on behalf     CLASS ACTION
of others similarly situated

      Plaintiff,

      v.

ROYAL SEAS CRUISES, INC.,

      Defendant.

_____/

### DEFENDANT'S MOTION TO COMPEL ARBITRATION
### AND TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant Royal Seas Cruises, Inc. ("RSC") moves to compel arbitration and to dismiss this action with prejudice under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, RSC moves to compel arbitration under the FAA and to stay this proceeding under Section 3 of the FAA until the arbitrator enters a final award.

### PRELIMINARY STATEMENT

Plaintiff, Brenda Bell ("Plaintiff"), filed her Class Action Complaint ("Complaint") on March 22, 2019, alleging claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). However, Plaintiff expressly agreed to arbitrate the claims in her Complaint, and waived her right to a jury trial as well as to bring a class action suit or class arbitration against RSC; therefore, her Complaint must be dismissed and her claims compelled to arbitration.

## INTRODUCTION

On September 11, 2018, Plaintiff visited http://www.consumerproductsusa.com ("Site"), a website owned and operated by RewardZone USA, LLC, ("RewardZone").  *See* Ex. A at ¶ 6 (Bhadania Decl.).  Upon landing on the Site, Bell provided her identifying information and agreed to the terms and conditions of the Site ("Terms and Conditions"), "which includes mandatory arbitration", by clicking the "Continue" button on the registration page.  *Id.* at ¶¶ 7 & 8.  The mandatory arbitration clause ("Arbitration Agreement") was contained in the Terms and Conditions, and conspicuously hyperlinked directly above the "Continue" button.  *See id.* at ¶ 9. Specifically, the arbitration provision calls for binding arbitration for:

> any disputes or claims you may have with us and our affiliates, advertiser clients and marketing partners (collectively, "Marketing Partners") who are third party beneficiaries of the mandatory arbitration provision.  Thus, for example, if you provide prior express written consent to be contacted via telemarketing or SMS/text messaging, *any claims you may have regarding any telemarketing or SMS/text messages you receive are subject to the mandatory arbitration provision.  The mandatory arbitration provision also waives your right to participate in a class action or multi-party arbitration.*  You may opt-out of the mandatory arbitration provision by providing written notice of your decision within thirty (30) days of the date that you first register on an [RewardZone] Website.

*Id.* at ¶ 9; Ex. B at 1 (emphasis added).  When Plaintiff clicked continue and proceeded to the next page, she was provided with a hyperlink to the list of "Marketing Partners".  *Id.* at 12.  RSC was one of the "Marketing Partners" displayed when the hyperlink was clicked.  *Id.* at ¶ 13. Plaintiff then confirmed her registration and agreement to be bound by the Terms and Conditions by clicking continue again.  *Id.* at ¶ 14.  Plaintiff's claims must be submitted to arbitration on an individual basis.

Additionally, in this lawsuit Plaintiff complains that her telephone number ending in 3250 was registered on the National Do Not Call Registry and she received "pre-recorded voice calls" from RSC that were "unsolicited" and for which she "never provided her express written

or oral consent" to receive.  *See* Dkt. No. 1 at ¶¶ 18-22.  On this basis she seeks to represent a putative nationwide class of purported similarly aggrieved persons on three (3) separate TCPA claims.  However, Plaintiff provided prior express written consent "to receive phone sales calls and test messages" from RSC "using an autodialer" and/or "pre-recorded messages." *See* Ex. A at ¶¶ 11, 12.

## ARGUMENT

### I.   LEGAL STANDARD

Arbitration agreements are governed by and enforceable under the FAA.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23-24 (1991). The FAA and the strong federal policy favoring arbitration, require courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *See, Shriever v. Navient Solutions, Inc.*, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014).  Accordingly, in ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint.  *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009).

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements."  *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2009) (citing *Perry v. Thomas*, 482 U.S. 483 (1987) ).  "Federal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration."  *Id.* (citing *Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) );  *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (explaining that "it is the role of courts to 'rigorously enforce agreements to arbitrate' "

and to construe any doubt in favor of arbitrability).  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mercury Construction*, 460 U.S. at 24-25 (footnote omitted).

"[U]nder the FAA, no party can be compelled to arbitrate unless that party has entered into an agreement to do so." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted);  *see Seaboard Coastline R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir. 1982).  "[W]hen determining whether an arbitration agreement exists, 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts.'"  *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (citations omitted).  Even in this age of internet commerce, traditional contract-based principles of offer and acceptance still guide the determination of whether a valid arbitration agreement exists.  *See Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) ("whether an arbitration agreement exists at all is simply a matter of contract") (internal quotations and citations omitted); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (commerce conducted over the internet "has not fundamentally changed the principles of contract").

Section 4 of the FAA permits a court to compel arbitration when one party – as in the instant case – has failed, neglected, or refused to comply with an arbitration agreement.  9 U.S.C. § 4; *see also McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 WL 3726040, at *2 (S.D. Fla. Feb. 24, 2017).  A district court must consider three factors on a motion to compel arbitration: "(1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue

exists; and (3) whether the right to arbitrate was waived." *Pierre-Louis v. CC Solutions, LLC*, No. 17-60781, 2017 WL 4841428, at *2 (S.D. Fla. Oct. 26, 2017) (citing *Nat'l Auto Lenders, Inc. V. Syslocate, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010)).

Finally, There is no reason a *statutory* claim, like the TCPA claims here, cannot be arbitrated. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."); *accord Mackler v. Fitness Int'l, LLC*, No. 16-80150-CIV, 2016 WL 7756623, at *2 (S.D. Fla. Apr. 22, 2016) (citing *Green Tree* with approval). In fact, TCPA claims such as Plaintiff's are routinely compelled to arbitration. *See, e.g., Garcia v. Kendall Lakes Auto., LLC*, No. 18-24397-CIV, 2019 WL 1359475 (S.D. Fla. Mar. 26, 2019); *Greenberg v. Doctors Assocs., Inc.*, 338 F. Supp. 3d 1280 (S.D. Fla. 2018); *Drozdowski v. Citibank, Inc.*, No. 2:15-CV-2786-STA-CGC, 2016 WL 4544543 (W.D. Tenn. Aug. 31, 2016); *Brown v. DIRECTV, LLC*, No. CV 12-08382 DMG EX, 2013 WL 3273811 (C.D. Cal. June 26, 2013). Further, nothing in the TCPA evinces an intention to foreclose arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

### a.        A Valid Written Arbitration Agreement Exists

As a threshold issue, the Arbitration Agreement also includes a clause giving the arbitrator "exclusive authority to resolve any dispute including any claim that all or any part of the Terms & Conditions, including this provision, are unenforceable." Ex. B at 5-6. This delegation provision in the agreement to arbitrate, which Plaintiff agreed to, sends the question of the validity and enforceability of the Arbitration Agreement along with any gateway issues to the arbitrator. *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 440 (2006) ("a

challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court"); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (upholding "delegation provision" in arbitration agreement in which parties had "agree[d] to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement"). If Plaintiff questions the validity of the Arbitration Agreement, this Court's analysis ends and the validity question goes to the arbitrator.

Nevertheless, should the Court's analysis of the validity of the Arbitration Agreement continue, under the FAA a written provision to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Greenberg v. Doctors Assocs., Inc*., No. 1:18-CV-22505-UU, 2018 WL 4927910, at *1 (S.D. Fla. Aug. 29, 2018) (internal citations omitted). A valid agreement to arbitrate is formed where there is mutual assent to certain and definite contractual terms, such as the agreement the Plaintiff entered into with RSC. *See id.* at *2.

By clicking on the "I Confirm" box and the "Continue" buttons, Plaintiff agreed to the Arbitration Agreement that governs her claims here. One of the primary means of forming a contract on the internet is the "'clickwrap' (or 'click-through') agreement, in which website users typically click an 'I agree' box after being presented with a list of terms and conditions of use." *IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013) (quoting *Hines v. Overstock.com*, 668 F.Supp.2d 362, 366 (E.D.N.Y.2009). "Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d

66, 75 (2d Cir. 2017) (*citing Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) (collecting cases)); *see also Whitt v. Prosper Funding LLC*, No. 1:15-CV-136-GHW, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (collecting cases). The clickwrap agreements here – both to arbitrate and to provide consent to receive calls and texts from RSC – and the accompanying hyperlinks to the Terms and Conditions and the list of Marketing Partners were conspicuous and clear. Plaintiff was made aware of the Arbitration Clause and affirmatively agreed to it, s*ee* Ex. A at ¶¶6-10; she cannot dispute that she agreed to the Terms and Conditions. There is a valid agreement to arbitrate so the first factor is met.

### b. Each of Plaintiff's TCPA Claims Raises an Arbitrable Issue

The Arbitration Agreement specifically calls for arbitration of Plaintiff's TCPA claims against RSC and clearly advised Plaintiff of the scope of disputes that were covered by the clause.

> **Mandatory Arbitration.** These Terms contain a mandatory arbitration provision below that requires you to arbitrate individually any disputes or claims you may have with us and our affiliates, advertiser clients and marketing partners (collectively, "Marketing Partners") who are third party beneficiaries of the mandatory arbitration provision. ***Thus, for example, if you provide prior express written consent to be contacted via telemarketing or SMS/text messaging, any claims you may have regarding any telemarketing or SMS/text messages you receive are subject to the mandatory arbitration provision. The mandatory arbitration provision also waives your right to participate in a class action or multi-party arbitration***. You may opt-out of the mandatory arbitration provision by providing written notice of your decision within thirty (30) days of the date that you first register on an [RewardZone] Website.

*Id.* at ¶ 9; Ex. B at 1 (emphasis added). The Terms and Conditions go on to state:

> **Arbitration/Dispute Resolution.** If you have a dispute concerning . . . ***a telemarketing call or SMS/text message you received from us or a Marketing Partner*** . . . . ***you must submit your dispute for resolution by arbitration*** before the American Arbitration Association ("AAA") in the county where you live by filing a separate Demand for Arbitration online by following the instructions at https://apps.adr.org/webfile/.

Ex. B at 6 (emphasis added).

The plain language of the provision shows the parties' intent to have arbitration serve as the primary recourse for disputes connected to calls or texts from RSC – the prime example included in the clause speaks directly to Plaintiff's TCPA claims here.  In determining the scope of the arbitration clause, courts look at the parties' intent to submit the dispute to arbitration, starting at the language of the arbitration provision, and construing any doubt in favor of arbitrability in accordance with the strong federal policy favoring arbitration.  *See, e.g., Mitsubishi*, 473 U.S. at 626 ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

Plaintiff cannot deny she electronically entered into the Arbitration Agreement and consented to receive the communications she now complains of.  *See* Ex. A at ¶¶ 6-16.  Plaintiff also cannot deny that the plain language of the Arbitration Agreement reflects the parties' intent to arbitrate claims under the TCPA.  Under Florida law, "the plain meaning of the actual language used by the parties [in a contract] controls."  *Pol v. Pol*, 705 So. 2d 51, 53 (Fla. 3d DCA 1997).  The Terms and Conditions plainly call for arbitration of Plaintiff's Claims.

Plaintiff also cannot dispute that RSC, as an intended third party beneficiary of the Arbitration Agreement, is allowed to enforce the clause and compel arbitration of Plaintiff's claims.  "Non-parties to a contract containing an arbitration clause cannot compel parties to a contract to arbitrate unless it is determined that they are a third party beneficiary to the contract." *Peters v. The Keyes Co.*, 402 F. App'x 448, 451 (11th Cir. 2010) (quoting *Fla. Power & Light Co. v. Road Rock, Inc.*, 920 So.2d 201, 203 (Fla.Dist.Ct.App.2006).  "To qualify as a third-party beneficiary, the [arbitration clause] had to be executed 'for the primary and direct benefit of'" RSC.  *Id.* (quoting *Morgan Stanley DW Inc. v. Halliday*, 873 So.2d 400, 403 (Fla.Dist.Ct.App.2004)).  The Arbitration Agreement states that "any disputes or claims you may

have with us "*and our affiliates, advertiser clients and marketing partners (collectively, "Marketing Partners") who are third party beneficiaries of the mandatory arbitration provision*" must be arbitrated. The clause clearly is intended for the primary and direct benefit of the "Marketing Partners", including RSC. *See* Ex. A at ¶ 13.

If Plaintiff resists arbitration, she has the "burden of *proving* that the claims at issue are *unsuitable* for arbitration." *Mackler*, 2016 WL 7756623, at *2 (internal citation and quotation omitted); (emphasis added)). That unsuitability has to be real, not merely a speculative contention, and cannot undercut the FAA. *Id.* When in doubt, questions of arbitrability are resolved in favor of arbitration. As the Supreme Court made clear long-ago the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). An arbitrable issue exists regarding the Plaintiff's TCPA claims, therefore the second factor is met.

### c. RSC Has Not Waived the Right to Arbitrate Plaintiff's Claims

Plaintiff filed her lawsuit on March 22, 2019, and served it six (6) days later. RSC filed its Answer and Affirmative Defenses on May 9, 2019, and has not otherwise filed any paper or taken an inconsistent position on the right under the FAA to require Plaintiff to arbitrate. At the time of filing its Answer, RSC was unaware of Plaintiff's consent and agreement to arbitrate through the RewardZone website. Of course Plaintiff failed to mention it and RSC was still in the process of conducting the investigation into Plaintiff's claims. As soon as RSC learned that Plaintiff had consented to the complained-of communications and agreed to arbitrate, and had received the Declaration from RewardZone, the undersigned promptly notified counsel for

Plaintiff, via email, and provided the Bhadania Declaration (Ex. A). *See* Ex. C.[1] This was done just six (6) days after RSC's time had lapsed to amend its responsive pleading as a matter of course. *See* 15(a)(1). Thus, RSC's minor delay in compelling arbitration was not in bad faith or for dilatory reasons, and does not unduly prejudice Plaintiff.

The Eleventh Circuit has found prejudice where a party litigates for some time before invoking its arbitration right, thereby forcing the other party to incur substantial time and expense. See, e.g., *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (finding prejudice where the party asserting waiver demonstrated that its adversary allowed, at a minimum, five years to pass-the time between the liability action and the enforcement action-before invoking its right to arbitrate); *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (same after one year and eight month delay). There has been no such delay here, where RSC notified Plaintiff of its intent to move to compel arbitration as soon as it learned of the Arbitration Agreement. Additionally, "both Florida and federal law favor arbitration, therefore any party arguing waiver of arbitration bears a heavy burden of proof." *Mixed Fighting Aliance Promotions, Inc. v. De La Noval*, No. 11-21107-CIV, 2011 WL 13223750, at *4 (S.D. Fla. Oct. 18, 2011). Thus, "questions regarding the waiver of arbitration should be construed in favor of arbitration rather than against it." *Garcia*, 2019 WL 1359475, at *6.

Whether there is a "[w]aiver of the right [to arbitrate] does not necessarily depend on the timing of the motion to compel arbitration, but rather on the prior taking of an inconsistent position by the party moving therefor." *Miller & Solomon Gen. Contractors, Inc. v. Brennan's*

---

[1] The email with Ex. A contained confidential information and is subject to Federal Rule of Evidence 408, and is therefore not attached to this motion. However, the undersigned's follow up email, sent on the same day, notified Plaintiff's counsel of RSC's intention to seek leave to amend RSC's Affirmative Defenses to include the class action waiver and arbitration as a defense, and to move to compel arbitration.

*Glass Co.*, 824 So. 2d 288, 290 (Fla. 4th DCA 2002) (internal citation omitted); *see also Versailles Sur La Mer Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 618CV1125ORL37TBS, 2018 WL 3827154, at *4 (M.D. Fla. July 24, 2018), *report and recommendation adopted,* No. 618CV1125ORL37TBS, 2018 WL 3817758 (M.D. Fla. Aug. 10, 2018) ("A party claiming waiver of arbitration must demonstrate: 1) knowledge of an existing right to arbitrate and 2) active participation in litigation or other acts inconsistent with the right.") (quoting *Ibis Lakes Homeowners Ass'n, Inc. v. Ibis Isle Homeowners Ass'n, Inc.*, 102 So. 3d 722, 730-731 (Fla. 4th DCA 2012)).  RSC has not taken an inconsistent position simply by filing an Answer prior to filing this Motion.  RSC has not actively participated in litigation and immediately notified Plaintiff and sought to amend its pleading to assert its right to arbitration as soon as it became aware if the Arbitration Agreement.

## II.   THE CASE SHOULD BE DISMISSED, NOT STAYED

Each of Plaintiff's claims are brought under the TCPA and must be submitted to arbitration.  The FAA provides, in pertinent part, that a court compelling arbitration "*shall* on application of one of the parties[,] *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Cusolito v. Citibank, N.A.*, No. 0:17-CV-60963-WPD, 2017 WL 8890662, at *3 (S.D. Fla. Oct. 6, 2017) (quoting 9 U.S.C. § 3) (emphasis added).  Despite this statutory language, this District has made clear that "**[t]he weight of authority clearly supports** *dismissal* **of the case when** *all* **of the issues raised in the district court must be submitted to arbitration.**" *Cusilito* at *3 (internal citations omitted; emphasis added).  *See also Garcia*, 2019 WL 1359475, at *7 (granting Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's TCPA Complaint).  Ultimately, "district courts are vested with discretion to determine whether stay or dismissal is appropriate." *Cusilito* at *3 quoting

*Swartz v. Westminister Servs., Inc.*, No. 810-CV-1722-T-30AEP, 2010 WL 3522141, at *2 (M.D. Fla. Sept. 8, 2010). This Court should exercise its discretion to compel arbitration and dismiss this case.

## II. CONCLUSION

For the foregoing reasons, this case must be compelled to arbitration and dismissed. Or, alternatively, this case must be compelled to arbitration and the proceedings stayed under Section 3 of the FAA until the arbitrator enters a final award.

## CERTIFICATE OF GOOD FAITH
## CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(3)

Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: June 25, 2019                    Respectfully submitted,

By:    */s/ Gregg I. Strock*
GREGG I. STROCK
Florida Bar No. 1010140
JEFFREY A. BACKMAN
Florida Bar No. 662501
GREENSPOON MARDER LLP
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
gregg.strock@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant.*