UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-60752-RAR

BRENDA BELL, individually and on behalf
of all others similarly situated,

      Plaintifff,                                 CLASS ACTION

v.

ROYAL SEAS CRUISES, INC., a Florida
corporation,

      Defendant.

_____/

**PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION**

Plaintiff Brenda Bell ("Plaintiff" or "Bell") hereby files her Objection to Magistrate Judge Jared M. Strauss's Report and Recommendation (hereafter "Report") filed with the Court on May 13, 2020. (Dkt. 42.) As the basis for her objection, Plaintiff states as follows:

**I.    INTRODUCTION**

Plaintiff respectfully objects to the Report to the extent that Magistrate Judge Strauss found as a matter of law that the website through which Defendant Royal Seas Cruises, Inc. ("Defendant" or "Royal Seas") claims to have obtained Plaintiff's consent used language sufficient to manifest assent to automated calls.[1] In doing so, Magistrate Judge Strauss rejected application of the *Anand* case, which considered nearly identical website language and layout as

---

[1] As the Magistrate Judge recognized, Plaintiff denies visiting the website identified by Plaintiff. Analysis of the website language presumes *arguendo* that Bell did visit the website, but she maintains her testimony and does not make any such concession.

1

the website at issue in this case. Plaintiff takes issue with the Report's conclusion on this point, and the rejection of *Anand*, for several reasons. First, Magistrate Judge Strauss disregarded *Anand* in part because it did not apply Florida law; however, in determining which state's law should apply to this matter, there is little support for deciding this case according to Florida law. Second, and even if Florida law were applicable to this case, the basic elements of notice and manifestation of assent must be present, and while the *Anand* and the *MetroPCS* case relied on in the Report both agree on these elements, *MetroPCS* assumed and otherwise overlooked the assent requirement when considering a browsewrap agreement from a service provider. In any event, doubt should be resolved in favor of Plaintiff as the non-movant, not in favor of Defendant seeking to bind Plaintiff with arbitration to which she credibly disputes agreeing.

Not only does *Anand* more fully consider the elements of notice and assent, but it is directly on point in analyzing a website design that is "virtually indistinguishable" from the design at issue in this case. Accordingly, the Court should not disregard the *Anand* case and its analysis, and the Court should reject the finding of Magistrate Judge Strauss that any visitor to the website would have assented to the arbitration agreement as a matter of law.

## II.    BACKGROUND

On November 6, 2018, Plaintiff received an unsolicited call from Royal Seas on her cellphone, which included a prerecorded voice message. (Compl., dkt. 1, at ¶ 19.) During the call, Plaintiff asked the Defendant to stop calling her. (*Id.*) Nevertheless, Plaintiff continued to receive calls from Royal Seas, originating from a variety of phone numbers. (*Id.* ¶ 20.) Plaintiff had previously registered her phone number on the National Do Not Call Registry, and she did not consent to the calls from Royal Seas. (*Id.* ¶¶ 18, 22.) In order to redress her injuries and stop

the calls, Plaintiff filed the Complaint on March 22, 2019, on behalf of herself and classes of similarly situated individuals. (*Id.* ¶ 26.)

On June 25, 2019, Royal Seas moved to compel arbitration. (Dkt. 16) In support, Defendant pointed to a "visitor to a Fluent website," specifically www.consumerproductsusa.com ("the website"), who submitted an entry on September 11, 2018, for an online sweepstakes using Plaintiff's name, phone number, and other personal information related to Plaintiff. (Bhadania Affidavit, Dkt. 16–1, at ¶¶ 6, 11–12.) The visitor supposedly clicked through the website, including a page that linked to terms and conditions containing an arbitration agreement. (*Id.* ¶¶ 7–9.) The terms and conditions refer to users of RewardZoneUSA.com, NationalConsumerCenter.com, and "other websites" operated by RewardZone USA, LLC ("RewardZone"). (ECF 16-2, at 2.) Royal Seas seeks to enforce the mandatory arbitration clause as a "marketing partner" under the RewardZone terms and conditions. (ECF 16, at 2.) Plaintiff has testified that she never visited the website or authorized anyone to do so on her behalf. (Declaration of Brenda Bell, Dkt. 26-1.)

After considering Defendant's motion and Plaintiff's response, Magistrate Judge Strauss issued his Report, recommending that the motion be denied without prejudice pending a bench trial on the limited issue of whether Plaintiff visited the website. (Report, Dkt. 42 at 1.) Magistrate Judge Strauss approached analysis in three parts: first, he reasoned that the question of whether the parties agreed to arbitrate was appropriately before the Court (rather than an arbitrator), but deferred to the arbitrator on the question of whether Defendant is a third party who could enforce any such agreement. (*Id.* at 7–10.) Second, Magistrate Judge Strauss found that the website's language was sufficient to bind visitors to the terms and conditions, and he concluded as a matter of law that there was no genuine dispute of material fact as to whether a

3

party who clicked "continue" assented to the terms. (*Id.* at 10–16.) Third, Magistrate Judge Straus found a genuine dispute of material fact as to whether Plaintiff actually visited the website and recommended a bench trial on the matter before determining whether Bell could be compelled to arbitrate her claims. (*Id.* at 16–17.)

**III.    ARGUMENT**

       **A.    Plaintiff Objects To Magistrate Judge Strauss's Rejection Of *Anand* And Conclusion As A Matter Of Law That The Website Language Was Sufficient.**

As stated above, Plaintiff does not object to Magistrate Judge Strauss's finding that a bench trial is warranted on the issue of whether Bell visited the website or his decision to defer to the arbitrator (if there should be one) on certain issues. Plaintiff objects to the Report to the extent that Magistrate Judge Strauss disregarded the *Anand* case and found as a matter of law that the website's design and language was sufficient to bind visitors to arbitration. For the reasons stated below, the Report's recommendation on this point should be rejected.

       **1.    There is no justification for restricting analysis of Plaintiff's claims to Florida contract law.**

As his final, but "most important[]," justification, Magistrate Judge Strauss found that *Anand* should not be followed here because it applied Illinois law rather than Florida law. However, no consideration was made in the Report as to whether Florida law should, in fact, apply to this case. As explained below, it should not.

Though the heart of Plaintiff's claims is a federal statute, the issue before the Court is one of contract formation, which is a matter of state law. As the forum state, Florida's choice of law rules apply—to determine which state's laws applies to a contract, Florida has long adhered to the rule of *lex loci contractus*. *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, No. 606CV-1180-ORL-31UAM, 2007 WL 3024345, at *2 (M.D. Fla. Oct. 15, 2007). This doctrine specifies

4

that the law of the jurisdiction where the contract was executed should control. *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988). "When parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary." *Id.*

Here, there are no facts to support applying Florida contract law to this matter. As a reminder, Plaintiff denies visiting the website and entering into any agreement at all. Nevertheless, Bell resides in Springfield, Ohio. (Dkt. 1 at ¶ 6.) If she had visited the website, she would have done so in Ohio, not Florida. Further, because of the nature of an internet contract, it is unclear where the other party to the supposed contract would have been located. The company that Defendant contends is responsible for the website, Fluent, LLC ("Fluent"), is registered in New York. Additionally, the "agreement" at issue specifies that New York law would govern the contract. (Dkt. 16-2 at 6.) Thus, arguments could be made for the application of Ohio contract law or New York contract law, but there is no justification for deciding this issue as a matter of Florida state law.

Magistrate Judge Strauss erred in applying Florida law to this matter; more specifically, he erred in doing so to the exclusion of *Anand*, a case directly on point to the website language and design at issue here. The Court should not repeat this error.

> **2.     While *MetroPCS* and *Anand* agree on the basic principles of internet contract formation, *MetroPCS* failed to adequately address assent— the element that defeated formation in *Anand* when considering a website layout "virtually identical" to that in this case.**

Despite any confusion as to which state law should apply, the resulting analysis should not change. The basic elements of contract formation remain the same, whether considering *MetroPCS*, *Anand*, or cases from other states. However, Magistrate Judge Strauss's reliance on *MetroPCS* for a differing result than that reached in *Anand* reveals an error of analysis: the

5

*MetroPCS* decision failed to fully address the element of assent. This is a critical component of contract formation under any applicable laws, and it is what resulted in the finding in *Anand* that the website language—which was "virtually identical" to that used here—was insufficient to bind visitors.

In Florida, the key elements of internet contract formation are notice and manifestation of assent. *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. Dist. Ct. App. 2018). These elements are hardly unique to Florida law: in the *Anand* case cited by Plaintiff, which applied Illinois substantive law, the same elements were considered. *See Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213, at *3 (N.D. Ill. June 28, 2019). These elements are generally required across the country. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 265–67 (E.D.N.Y. 2019) (applying same analysis as *Anand* to hybridwrap under Washington state law); *Hodosh, Lyon & Hammer, Ltd. v. Barracuda Networks, Inc.*, No. CV 15-316S, 2016 WL 705272, at *5 (D.R.I. Jan. 4, 2016) (finding that both California and Rhode Island drew on the Second Circuit opinion[2] requiring notice and manifestation of assent in online contracts); *Snap-On Bus. Sols. Inc. v. O'Neil & Assocs., Inc.*, No. 5:09-CV-1547, 2010 WL 2650875, at *1 (N.D. Ohio July 2, 2010) (finding browsewrap agreement invalid under Ohio law for failing to require users to "manifest their acceptance of—or even view" the terms in question).

Though *MetroPCS* did not use the term "hybridwrap," the Florida court did agree with *Anand* that some agreements "do[] not fit precisely within either category" of browsewrap or clickwrap. *MetroPCS*, 273 So. 3d at 1028. Whether referred to as hybridwrap or "near the center" of the two categories (*see* dkt. 42 at 13), notice and manifestation of assent must still be found.

---

[2] *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir.2002)

In *MetroPCS*, however, the court did not adequately analyze assent. After laying out the two critical issues, it focused primarily on notice and ultimately concluded that the plaintiff agreed to arbitrate because he "was put on notice that his contract with MetroPCS was subject to arbitration." *MetroPCS*, 273 So. 3d at 1029. The Florida court addressed assent only in a footnote, stating in passing that the plaintiff's continued use of cell phone service manifested assent to the terms. *Id.* at 1028, n. 1. This analysis is of little use in this case, as Plaintiff has no such relationship or service contract with Defendant or Fluent that would obviate the need to clearly indicate assent.

In *Anand*, on the other hand, the Northern District of Illinois engaged in a more robust analysis of the manifestation of assent that is required to bind parties to a hybridwrap (or less than clickwrap) agreement. There, assent was not sufficiently demonstrated because "nothing expressly linked the website's 'I understand and agree…' language to the 'Continue' button." *Anand*, 2019 WL 2716213, at *4. Even though the plaintiff in *Anand* clicked a button to continue, the website did not include any notice or explanation that doing so constituted assent or that continuing on the site was conditioned on assent. *Id.* "[T]he mere proximity of a terms and conditions hyperlink to a button that the user must click to proceed *does not equate to an affirmative manifestation of assent* to the terms and conditions." *Id.* (emphasis added). *Anand* is not alone in taking this approach. *See Nicosia*, 384 F. Supp. 3d at 266 (citing cases from federal district courts in Texas, South Carolina, New York, Washington, D.C., Illinois, and California).

This analysis applies directly to the case at hand, as the website supposedly visited by Plaintiff featured *the same language and layout*—as Magistrate Judge Strauss admits, the website design employed by Defendant and Fluent in this case is "virtually indistinguishable"

7

from that which was at issue in *Anand*. (Dkt. 42 at 14.) Notwithstanding the nearly identical design, the Report "respectfully disagrees with *Anand*" and recommends deviation. (*Id.* at 15.)

Despite the Magistrate Judge's recommendation, *Anand* is instructive and should not be disregarded for three reasons: (1) it focuses on the same basic contract elements as would be applicable under Florida law and the law of many other states—notice and manifestation of assent; (2) its analysis of assent is thorough, where *MetroPCS* merely assumed assent in a footnote due to a continued relationship; and (3) the website design that was meticulously reviewed in *Anand* is "virtually indistinguishable" from that at issue here. It is not only critically instructive, but directly on point in considering whether this particular website layout and language satisfies the element of manifestation of assent. Whether considered under Florida law or the law of another state, the elements of online contract formation remain the same, and the Magistrate Judge's rejection of *Anand* should not be accepted by the Court.

### 3. As the non-movant, Plaintiff is entitled to the benefit of doubt—the Court should not resolve a formation dispute as a matter of law in favor of Defendant.

In concluding that there was no material dispute as to whether a visitor to the Fluent website manifested assent to its terms and conditions—and deciding as a matter of law that there would be no formation issues if Plaintiff were found to have visited the website—Magistrate Judge Strauss resolved doubt and legal uncertainty in favor of Defendant, the party seeking to bind Bell to arbitration. Such resolution runs contrary to the law. Plaintiff is entitled to the benefit of all reasonable doubts that arise, and the Court should not accept the Report's recommendation otherwise.

As outlined in Plaintiff's response to the motion to compel arbitration, "parties cannot be forced to submit to arbitration if they have not agreed to do so." *Magnolia Capital Advisors, Inc.*

*v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785 (11th Cir. 2008) (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)). A district court considering whether the parties actually agreed to arbitrate "should give to the [party denying the agreement] the benefit of all reasonable doubts and inferences that may arise." *Magnolia*, 272 Fed. Appx. at 786 (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

On the question of whether Plaintiff visited the website, the Report does give Plaintiff the benefit of reasonable inferences, finding that there is a "genuine dispute of material fact" sufficient to warrant a bench trial. However, on the issue of the website design and any manifestation of assent, Magistrate Judge Strauss resolved his doubts about sufficiency in favor of Defendant and finding an agreement, rather than Bell as the non-movant.

At several points in the report, Magistrate Judge Strauss acknowledges that the website lacks the indicia of a binding internet agreement as identified in *Anand* and *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014):

- "[T]he user is not required to check an acknowledgement box to accept the Terms and Conditions…" (Dkt. 42 at 14.)
- "The statement here **does not explicitly indicate that clicking Continue is the affirmative act** by which the user would manifest her acknowledgement of the 'I understand and agree' statement. But its placement directly over the Continue button . . . would strongly imply to a reasonable user a connection between the 'I understand and agree' statement and clicking Continue." (*Id.*) (emphasis added).
- "The key to *Anand*'s conclusion was that the 'I understand and agree' language, though placed directly above, the 'Continue' button, did not expressly tell the user that clicking 'Continue' would manifest assent." (*Id.* at 15.)

9

- "*Nguyen* did note that '**the proximity or conspicuousness of the hyperlink alone is not enough** to give rise to constructive notice' without **language indicating that some affirmative action will constitute assent** to hyperlinked Terms and Conditions." (*Id.*) (emphasis added).
- "[A]lthough **explicit language** stating 'By clicking Continue I understand and agree . . .' **would have given the user even clearer notice**, the logical implication of the 'I understand and agree' language being placed directly above the Continue button is sufficiently strong that a reasonable user would understand the effect of pressing Continue." (*Id.*) (emphasis added).

At the very least, Magistrate Judge Strauss's admitted "disagree[ment]" with these standards represents a level of legal or factual uncertainty. (*Id.* at 15.) Indeed, as noted in the above quotations, the Report relies on what the layout supposedly "strongly impl[ies]" and its "logical implication" more than what it actually communicates—or fails to communicate—to the website users. (*Id.* at 14, 15.) Rather than giving the benefit of reasonable doubt to Plaintiff as the non-movant, the Report resolves doubt in favor of Defendant and finds *as a matter of law* that the design is sufficient. In other words, the Magistrate Judge's recommendation is that the Court ignore Fluent's failure to tell visitors that clicking "Continue" manifests assent to arbitration and other terms, even though multiple courts have specified that clear language characterizing a user's action as manifestation of assent is required.

Magistrate Judge Strauss's conclusion that the website adequately secures assent "as a matter of law" is not based on the instructive analysis of other courts, but in spite of it. Reasonable doubts or inferences on this issue should not be resolved in favor of Defendant, as

10

the movant seeking to deprive Plaintiff of her day in court. This recommendation should be rejected.

## IV.  CONCLUSION

Plaintiff Brenda Bell respectfully objects to Magistrate Judge Strauss's Report and Recommendation to the extent that it rejects the standard applied in *Anand* in favor of the incomplete analysis conducted in *MetroPCS*. Accordingly, Plaintiff asks that the Court reject the Report's findings on this issue, deny Defendant's Motion to Compel Arbitration and Dismiss the Complaint, and grant any other relief the Court deems necessary and just.

DATED:  May 26, 2020                                       Respectfully submitted,

/s/      Ryan S. Shipp
Ryan S. Shipp
Florida Bar ID 52883
ryan@shipplawoffice.com
Law Office of Ryan S. Shipp, PLLC
814 Lantana Road, Suite 1
Lake Worth, Florida 33462
Tel: (561) 699-0399

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2020, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.

/s/ Ryan Shipp