UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA (FT. LAUDERDALE)

Case No. 0:19-cv-60752-RAR – Ruiz/Strauss

BRENDA BELL, individually and on behalf         CLASS ACTION
of others similarly situated

    Plaintiff,

v.

ROYAL SEAS CRUISES, INC.,

    Defendant.
_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S OBJECTION TO
JUDGE STRAUSS' REPORT AND RECOMMENDATION**

Defendant Royal Seas Cruises, Inc. ("RSC"), through counsel and pursuant to Fed. R. Civ. P. 72 and LR 7.1, submits this Opposition to Plaintiff Brenda Bell's ("Plaintiff") Objection to Judge Strauss' Report and Recommendation issued May 13, 2020 (ECF 42, "Report") (ECF 43, "Objection").

**PRELIMINARY STATEMENT**

Plaintiff filed her Objections, doing nothing more than rehashing the same arguments made before Judge Strauss. She essentially takes issue with one conclusion in the Report: that, as a matter of law, "there is no genuine dispute of material fact as to whether the person who clicked Continue on the Website assented to the Terms and Conditions." Report 15-16. Plaintiff takes issue with this conclusion because, according to Plaintiff, Judge Strauss disregarded a district court decision out of the Northern District of Illinois, *Anand v. Heath*, No. 19-cv-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019). In truth, however, Judge Strauss did not "ignore" *Anand*; instead, he closely analyzed *Anand* and "respectfully disagree[d]" for numerous reasons detailed in the Report. *Id.* 15. Plaintiff does not contend that Judge Strauss' finding was clearly

erroneous, contrary to law, or an abuse of discretion, (*see* Section I. LEGAL STANDARD, *infra*), but without citation to any legal authority or even a hint at the standard she would need to meet to warrant this Court overruling Judge Strauss' well-reasoned decision, Plaintiff instead implores this Court to simply ignore Judge Strauss' Report because Plaintiff prefers *Anand* to control the outcome here. Rule 72(a), or (b) for that matter, do not allow this Court to grant an objection to the Report for such a baseless reason. Plaintiff urges that Judge Strauss erred in applying Florida law, but not only was that argument waived because not raised, it also does not explain what law Judge Strauss should have applied instead. Finally, Plaintiff contends that the conclusion was contrary to law because all reasonable doubts should have been inferred in favor of Plaintiff. But Plaintiff missuses this principle of law by arguing that it requires a disagreement among Illinois and Florida law to be resolved in whatever way that Plaintiff would win.

Plaintiff filed a Class Action Complaint (ECF 1) alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et al.* ("TCPA") after allegedly receiving approximately five (5) telemarketing calls from RSC. RSC moved to compel arbitration (ECF 16, "Motion") because Plaintiff agreed to arbitrate her claims when she visited a website owned and operated by RewardsZone USA, LLC ("Website") and clicked the "Continue" button, consenting to receive the very telephone calls about which she now complaints, and acknowledging her assent to the terms and conditions of the Website, including the arbitration agreement. Plaintiff responded to the motion to compel arbitration with a self-serving, unsworn affidavit stating that she did not visit the Website prior to the filing of the Motion (ECF 26-1). She also argued that, *inter alia*, even if she was the person who visited the Website and clicked the Continue button, such conduct is insufficient to create an arbitration agreement. That is

because, according to Plaintiff, the Website is designed in a manner that is insufficient to capture assent to the Terms and Conditions (including the arbitration provision) from the person clicking the Continue button (unless that person has actual knowledge of the Terms and Conditions). RSC filed a Reply in further support of its Motion (ECF 29). Oral argument was held in front of Judge Ruiz, and the matter was referred to Judge Strauss for decision.

After reviewing the Motion, Response, and Reply, Judge Strauss issued a Report recommending that the Motion to Compel be denied without prejudice, finding that whoever visited the Website and clicked "Continue" assented to the Terms and Conditions (including the arbitration provision), but otherwise concluding that it was unclear on the record before him whether Plaintiff was that person. Judge Strauss therefore recommended that the Court hold a bench trial to determine whether Plaintiff, or someone acting on her behalf, actually visited the Website, in order to determine whether it was the Plaintiff that entered into this agreement to arbitrate. The Objections should be overruled.

## ARGUMENT

### I. LEGAL STANDARD

Plaintiff's Objection is devoid of any discussion on the standard Plaintiff must meet in order to be entitled to the relief she seeks. Plaintiff likely ignores the applicable standard because she cannot satisfy it; but Plaintiff's effort to avoid its application does not mean the Court can do so. While the Eleventh Circuit has yet to determine whether a motion to stay an action and compel arbitration is dispositive under § 636(b)(1) and Rule 72, "two circuit courts—the First and the Third—have ruled that motions to compel arbitration are not case-dispositive motions, which means" they are governed by the "clearly erroneous" or "contrary to law" standard of Fed. R. Civ. P. 72(a). *Amat v. Rey Pizza Corp.*, 204 F. Supp. 3d 1359, 1362 (S.D.

Fla. 2016).  *See also Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 689, 690 (S.D. Fla. 2015); *Wiand v. Wells Fargo Bank, N.A.*, No. 812CV00557T27EAJ, 2014 WL 12619888, at *2 (M.D. Fla. Aug. 5, 2014); *Moore v. Chuck Stevens Automotive, Inc.*, No. CA 1:12-00663-KD-C, 2013 WL 627232, at *1, n. 3 (S.D. Ala. Feb. 20, 2013) (listing cases).  *But see Tec Serv, LLC v. Crabb*, No. 11-62040-CIV, 2014 WL 11429048, at *1 (S.D. Fla. Feb. 24, 2014) (stating that "the standard of review normally turns on whether the magistrate judge has issued an *order* determining a nondispositive matter under Rule 72(a) or has issued a *report and recommendation* for a dispositive matter under Rule 72(b) (emphasis in original)).[1]

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Pullman–Standard v. Swint,* 456 U.S. 273, 285 n. 14, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).  "Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted).  A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, precedent, or rules of procedure.  *Corn v. United States*, No. 3:13-CR-100-J-32JRK, 2017 WL 2839063, at *1 (M.D. Fla. July 3, 2017) (citations and quotations omitted).  "In the absence of a legal error, a district court may reverse only if there was an abuse of discretion by the magistrate judge." *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 689, 690 (S.D. Fla. 2015) (internal quotations omitted).

Where a party "has failed to allege that any portion of an Order is clearly erroneous or is contrary to law, and has merely rehashed the arguments from its motion," the objections should

---

[1] As described below, even if the applicable standard of review was that of Fed. R. Civ. P. 72(b)—*de novo* review—Plaintiff's objection should be overruled.

be overruled. *Ford as Next Friend of Doe v. NCL Bahamas Ltd.*, No. 17-CV-24404, 2019 WL 3302368, at *1 (S.D. Fla. July 23, 2019) (citing *See Ritz v. Wipro Corp.*, No. 14-61273-CIV, 2015 WL 846853, at *6 (S.D. Fla. Feb. 26, 2015). This is precisely what Plaintiff has failed to do; thus, the Objection must be overruled.

### a. Plaintiff's Choice Of Law Argument Is Irrelevant

First, Plaintiff argues that Judge Strauss erred by applying Florida law and because "no consideration was made in the Report as to whether Florida law should, in fact, apply to this case." Objection 4. In addition to being false, this argument is a red herring. Judge Strauss gave express consideration to this issue:

> Neither party addresses which state's laws should apply to the contract formation issues; nor do they suggest that there is a conflict between any of the state laws that may apply. Although the parties do not expressly argue that any specific state's laws should apply, both parties cite to Florida case law and appear to apply Florida law to at least certain issues. Therefore, the undersigned also applies Florida law to the contract formation issues. The undersigned finds that it is proper to apply the law of the forum state (Florida) because the parties have not identified any conflict of law. *See Nationmotor Club Inc. v. Stonebridge Cas. Ins. Co.,* No. 10-CV-81157, 2013 WL 6729664, at *11 (S.D. Fla. Oct. 29, 2013) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state." (quoting *Gould v. Artisoft, Inc.,* 1 F.3d 544, 549 n. 7 (7th Cir. 1993))). While the agreement at issue contains a choice of law provision, the Court cannot apply that provision here when it is deciding whether the parties actually entered into that agreement in the first place.

Report 5, n. 1. Plaintiff does not like the result that Florida law has provided her, so she now argues, for the first time, that Florida law should not apply. That Plaintiff failed to raise the argument before Judge Strauss precludes her from making it now. *See Ocean M, Ltd. v. Dorr*, No. 18-CV-24530-UU, 2019 WL 5290897, at *2 (S.D. Fla. July 17, 2019) ("[N]ew argument . . . was not previously presented before the Magistrate Judge and, as such, the Court need not address it.") (citing *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[I]it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to

5

see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge.")). *See also Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (parties before a magistrate must take "not only their best shot but all of the shots") (internal quotation omitted). But even if the Court considered the argument, Plaintiff's Objection *still* fails to address "which state's laws **_should_** apply to the contract formation issues" and *still* does not "suggest that there is a conflict between any of the state laws that may apply." *Id.* (emphasis added). So what then is the reversible error?

RSC is a Florida entity and is expressly incorporated into the Arbitration Agreement as a "marketing partner," and Plaintiff has sued RSC in Florida. So while Plaintiff *now* contends that Ohio or New York law *could* apply, so too *could* Florida law. Illinois law, on the other hand, which *Anand* was decided under, is not even in the running. Plaintiff has not identified any conflict between the laws of Florida, Ohio, or New York on this issue. As Judge Strauss noted, "it is proper to apply the law of the forum state (Florida) because the parties have not identified any conflict of law." *Id.* (citing *See Nationmotor Club Inc.*, 2013 WL 6729664, at *11). Accordingly, there is no legal error, and the Objection should be overruled.

### b. **Plaintiff's Argument That *Anand* Should Control Over *Metro PCS* Is Flawed, And Is Not A Proper Objection**

Next, Plaintiff argues that Judge Strauss should have agreed with *Anand*, a case applying Illinois law, instead of *MetroPCS Commc'ns, Inc. v. Porter,* 273 So. 3d 1025 (Fla. 3d DCA 2018), applying Florida law. But, as explained above, Plaintiff provides no reason why Illinois law should control, nor does she point to any conflict between *MetroPCS* and Ohio or New York state law, which Plaintiff says could apply to this inquiry. Plaintiff herself does not argue that *Anand* is precedent on this Court, stating that "*Anand* is **instructive**." Objection 8 (emphasis added). Courts in Ohio and New York have not adopted *Anand*, so it would be "instructive"

under an analysis of their state laws as well. As *Anand* is not controlling precedent, Judge Strauss' decision to "respectfully disagree[ ]" with *Anand* is not contrary to law.

Rather than properly objecting under Rule 72, Plaintiff has "merely rehashed the arguments from [her] motion," so the objections should be overruled.[2] *Ford*, 2019 WL 3302368, at *1 (citing *Ritz*, 2015 WL 846853, at *6. Plaintiff's rehashed argument also continues to rely on a standard set forth by *Anand* that simply does not make sense and isn't binding on this Court. Plaintiff re-argues that the agreement is unenforceable because the website did not have the three words "by clicking continue" before the words "I understand and agree to email marketing, the Terms & Conditions which includes mandatory arbitration, and Privacy Policy." Objection 9-10. But Plaintiff's conclusion was rejected by Judge Strauss and it would mean that browsewrap agreements could never be enforceable, and only clickwrap agreements could be. Plaintiff's stance is the only one that is contrary to law.

"[A]bsent a showing of actual knowledge of the terms by the webpage user, the validity of a browsewrap contract hinges on whether the website provided reasonable notice of the terms of the contract." *Cavalieri v. Avior Airlines C.A.*, No. 17-CV-22010, 2018 WL 4194080, at *5 (S.D. Fla. Aug. 10, 2018), *report and recommendation adopted,* No. 17-22010-CIV, 2018 WL 5098873 (S.D. Fla. Sept. 18, 2018) (citation omitted); *see also Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1303 (M.D. Fla. 2018) (courts have enforced browsewrap agreements where hyperlinks to terms are conspicuous). Similarly, when "determining whether these 'hybridwrap' [or browsewrap] terms should be enforced, the focal point of the inquiry is whether "a reasonably prudent offeree would know that the [terms and conditions] governed" the user's actions. *Nicosia v. Amazon.com, Inc.*, 2019 WL 2482674, at *8 (E.D.N.Y. June 14, 2019).

---

[2] Each of Plaintiff's arguments regarding *Anand* is taken from her Response in Opposition to RSC's Motion, (ECF 26, pp. 9-10), and each was addressed by Judge Strauss in his Report.

7

**As Judge Strauss pointed out**, *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1177 (9th Cir. 2014),

> and the cases it collects, thus describe a continuum for website designs, with unenforceable browsewrap agreements containing "tucked away" terms at one end, very explicit clickwrap agreements at the other end, and other designs in the middle, varying based on different factors including how clearly they link acceptance of terms to the user taking some action.

Report 12. In this case, the Terms and Conditions were conspicuously hyperlinked directly above the "Continue" button that Plaintiff clicked. *See* ECF 16-1 at ¶ 9. It was impossible for Plaintiff to scroll to the button without seeing this language: "I understand and agree to email marketing, the Terms & Conditions *which include mandatory arbitration* and Privacy Policy." (underlined text represents hyperlinks) (emphasis added). The Terms and Conditions were "so prominently featured . . . in the center of the screen, above the 'continue' button that the users clicked" that the Court must conclude that a reasonable user would have been on notice of their assent to the Terms and Conditions. *Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 197 (D. Mass. 2015), *amended,* No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015), and *aff'd,* 873 F.3d 313 (1st Cir. 2017). **According to Judge Strauss**, the Website "falls near the center of this continuum," but "the design is close enough to the clickwrap end of the spectrum to provide the requisite inquiry notice. Report 12.

**As Judge Strauss noted**, the *Anand* court applied an incorrect standard that ignored the continuum by giving "insufficient weight to the combination of: (1) the proximity of the statement regarding Terms and Conditions (appearing directly above the Continue button) and (2) the 'I understand and agree' language that accompanied the hyperlink to the Terms and Conditions." Report 15. Rather than analyze the circumstances with which the hybridwrap appeared as a whole, as Judge Strauss did, the *Anand* court held that the agreement was unenforceable because "[t]here was no notice informing the user that, by clicking the button, the

8

user [wa]s agreeing to the terms and conditions." *Anand*, 2019 WL 2716213, at *4. But, that court failed to consider the other two factors of the continuum, the placement of the agreement and whether the screen was cluttered with potentially distracting content.

The placement of the hyperlinked Terms and Conditions on the Website along with the words "I understand and agree to email marketing, the Terms & Conditions ***which include mandatory arbitration*** and Privacy Policy" directly above the "Continue" button sufficiently placed Plaintiff on inquiry notice of the terms she agreed to. Plaintiff completely ignores *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1343 (S.D. Fla. 2018), which analyzed another Reward Zone website that was nearly identical to the Website here, where the Court was "convinced that whoever checked the boxes is bound by the Terms and Conditions, including the Arbitration Agreement." *See* Case No. 9:17-cv-81270-DMM, ECF 22-1, p. 5 for visual depiction of the website in *Hilton* (attached as Exhibit A).

Plaintiff's Objection does not point to any portion of the Report that is clearly erroneous or contrary to law with regard to Judge Strauss' decision to disagree with *Anand*. Instead, Plaintiff merely reiterates her flawed arguments in opposition to RSC's Motion to Compel Arbitration. Even under a *de novo* review, Plaintiff's argument would fail because, as Judge Strauss noted, *Anand* went well beyond "the precedents it cites finding insufficient notice involved the combination of the language and proximity presented here." Report 15. Therefore the Objection should be overruled.

   c. **Plaintiff Misapplies the Reasonable Doubt or Inference Standard**

Finally, Plaintiff objects to the Report by arguing that "on the issue of the website design and any manifestation of assent, Magistrate Judge Strauss resolved his doubts about sufficiency in favor of Defendant and [sic] finding an agreement, rather than Bell," and that "[s]uch

9

resolution runs contrary to the law." Objection 8-9. Plaintiff's argument, however, is just another reiteration that *Anand* should apply, not *MetroPCS*.

Plaintiff states that "[a]t several points in the report, Magistrate Judge Strauss acknowledges that the [W]ebsite lacks the indicia of a binding internet agreement as identified in *Anand*." Objection 9-10. According to Plaintiff, "Judge Strauss's admitted 'disagree[ment]' with these standards represents a level of legal or factual uncertainty," and that these uncertainties should have been resolved in favor of Plaintiff. *Id.* at 10. Plaintiff is saying that where an out-of-circuit case cannot be reconciled with an in-circuit case, then the out-of-circuit case should be followed in order to give Plaintiff "the benefit of all reasonable doubts and inferences that arise." Objection 9 (citing to *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785 (11th Cir. 2008). But *Magnolia* does not support this proposition. The law is the law. Either *MetroPCS* applies or *Anand* applies; or neither is controlling and Judge Strauss was entitled to consider other non-binding authority in any way he saw appropriate. There is no reasonable doubt or inference to be drawn from the differences in the case law. Judge Strauss held that he would follow the principles set forth in *MetroPCS* and other cases, not *Anand*, because he disagreed with the flawed reasoning in *Anand*. Period.

Judge Strauss expressed no doubt that "[a] reasonable user confronting a sentence 'I understand and agree to email marketing, the Terms & Conditions which includes mandatory arbitration, and Privacy Policy' would understand that he or she is assenting to the linked terms and, significantly, that those terms "include[] mandatory arbitration." Report 14. There is no other reasonable inference to be drawn. Instead, as explained above, Plaintiff believes that the opposite holding, the one from *Anand*, is somehow a "reasonable inference" that should be drawn in favor of Plaintiff. But Plaintiff cites to no case law to support such a result. That

makes sense, as Plaintiff's position, if accepted, would mean that any disagreement among case law should be resolved in favor of the case law that most benefits the Plaintiff, even if that means ignoring binding precedent. That cannot be, and Plaintiff's Objection should be overruled.

## CONCLUSION

Plaintiff has not shown the Court any portion of the Report that is clearly erroneous or contrary to law. Instead, she has used her Objection to restate her argument that an Illinois case applying Illinois law is "instructive" and therefore should be followed. That is not a proper objection to Judge Strauss' Report under Rule 72. For this reason, and the foregoing reasons, Plaintiff's Objection should be overruled and Judge Strauss' Report should be adopted by the Court.

Dated: June 9, 2020                              Respectfully submitted,

                                                 By:    */s/ Gregg I. Strock*
                                                        GREGG I. STROCK
                                                        Florida Bar No. 1010140
                                                        JEFFREY A. BACKMAN
                                                        Florida Bar No. 662501
                                                        GREENSPOON MARDER LLP
                                                        200 E. Broward Blvd., Suite 1800
                                                        Ft. Lauderdale, FL  33301
                                                        (954) 491-1120
                                                        jeffrey.backman@gmlaw.com
                                                        khia.joseph@gmlaw.com
                                                        gregg.strock@gmlaw.com
                                                        cheryl.cochran@gmlaw.com

                                                        *Attorneys for Defendant.*