UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CIV-60752-RAR

BRENDA BELL, individually and on
behalf of others similarly situated,

       Plaintiff,

v.

ROYAL SEAS CRUISES, INC.,

       Defendant.

_____/

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon United States Magistrate Judge Jared M. Strauss's Report and Recommendation [ECF No. 42] ("Report"), filed on May 13, 2020.   The Report recommends that the Court deny without prejudice Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Class Action Complaint [ECF No. 16] ("Motion") pending a bench trial on the limited issue of whether Plaintiff, or someone authorized by Plaintiff, visited the website at issue on September 11, 2018 at approximately 11:09 EST and clicked "Continue," which the Report concluded was sufficient to manifest assent to the arbitration term.   *See* Report at 1.   Plaintiff filed objections to the Report on May 26, 2020 [ECF No. 43] ("Objections" or "Obj."), and Defendant filed its Response to Plaintiff's Objections on June 9, 2020 [ECF No. 44] ("Response").   Having reviewed the Report, Objections, and Response, conducted a *de novo* review of the record, and being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** as follows: 1) the Report [ECF No. 42] is hereby **AFFIRMED AND ADOPTED** as supplemented herein; 2) Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Class Action Complaint [ECF No. 16] is **DENIED**; and 3) a bench trial shall be held on the limited issue of whether Plaintiff, or someone authorized by

Plaintiff, visited the website in question and clicked "Continue" at the date and time specified above.

## I.  <u>BACKGROUND</u>

### A.  *Factual Background*

The Court assumes familiarity with the factual background but will provide a brief overview of the relevant circumstances here.

Plaintiff filed a Class Action Complaint on March 22, 2019, alleging violations of the Telephone Consumer Protection Act ("TCPA") after receiving approximately five (5) telemarketing calls from Defendant.   *See generally* Class Action Complaint and Demand for Jury Trial [ECF No. 1] ("Complaint").   Defendant seeks to compel arbitration, arguing that Plaintiff agreed to an arbitration provision governing this dispute when Plaintiff visited a website (http://www.consumerproductsusa.com; hereinafter the "Website") on September 11, 2018.   The Website is owned and operated by RewardsZone USA, LLC.   According to an affidavit Defendant filed in support of its Motion, visitors to the Website are prompted to provide identifying information, including their name, telephone number, email address, mailing address, and birth date.   *See* Ex. A to Motion at ¶¶ 7, 11-12 [ECF No. 16-1] ("Bhadania Affidavit").

According to the Bhadania Affidavit, a user visited the Website on September 11, 2018 and provided Plaintiff's name and other identifying information.   *Id*. at ¶¶ 7, 11-12.   That user then pressed the "Continue" button, which was directly underneath a statement that read: "I understand and agree to email marketing, the <u>Terms and Conditions</u> which includes mandatory arbitration and <u>Privacy Policy</u>."   *Id*. at ¶¶ 7-8; *see also* Report at 2 (providing visual image of the relevant portion of the website).   The site's Terms and Conditions, which could be accessed by clicking the hyperlink on those same words above the "Continue" button, contain an arbitration provision that requires the website visitor "to arbitrate individually any disputes or claims you may

have with [the Website owner] and [its] affiliates, advertiser clients and marketing partners (collectively, 'Marketing Partners') who are third party beneficiaries of the mandatory arbitration provision."   Bhadania Affidavit at ¶ 9.   The terms specifically state that "any claims . . . regarding any telemarketing or SMS/text messages you receive are subject to the mandatory arbitration provision."   *Id*.

On a subsequent page displayed after a user clicks the "Continue" button described above, the user is asked to confirm his or her personal information to complete registration.   *Id*. at ¶ 12. Below a display of the information the user provided, a message appears explaining that the user, by checking a box and clicking another "Continue" button, consents to receive telephone sales calls and text messages "from CAC and our Marketing Partners" at the telephone number the user provided.   *Id*.   Although the Terms and Conditions do not identify whom the Marketing Partners are, the words "Marketing Partners" are hyperlinked and clicking on the link displays an extensive list of "call center brand names" including Defendant.   *Id*. at ¶ 13.

Plaintiff denies that she ever visited the Website prior to the filing of the Motion and avers that she never authorized anyone to visit the site on her behalf.   Ex. A to Response at ¶ 6 [ECF No. 26-1] ("Plaintiff's Declaration").   However, she acknowledges that the person who visited the Website on September 11, 2018 provided Plaintiff's correct name, phone number, mailing address, email address, and date of birth.   *See id*. at ¶ 8.

### B.  *Procedural Background*

On June 25, 2019, Defendant moved to compel arbitration, arguing that Plaintiff agreed to arbitrate her claims when she visited the Website and clicked the "Continue" button, thereby consenting to receive the telephone calls at issue and acknowledging her assent to the terms and conditions of the Website, including the arbitration agreement.   In her Response, Plaintiff argues that since she never visited the Website, she could not have clicked the "Continue" button to

indicate assent to the arbitration agreement (assuming that would constitute consent). Alternatively, she argues that even if she was the person who visited the Website and clicked the "Continue" button, such conduct did not create a binding agreement because, according to Plaintiff, the Website is designed in a manner that is insufficient to capture assent to the Terms and Conditions (including the arbitration provision) from the person clicking the "Continue" button unless that person has actual knowledge of the Terms and Conditions.   Finally, Plaintiff maintains that even if an agreement to arbitrate was made, Defendant is not a third-party beneficiary that is entitled to enforce the arbitration agreement.

In its Reply, Defendant insists that the issues raised by Plaintiff must be decided by the arbitrator because the arbitration agreement contains a delegation clause under which the arbitrator, not the Court, is tasked with deciding gateway issues.   Defendant also argues that Plaintiff's Declaration is insufficient to create a genuine issue of material fact, the Website provided sufficient inquiry notice of the Terms and Conditions to create an agreement, and Defendant is a third-party beneficiary under the agreement.

On March 11, 2020, the Court referred Defendant's Motion to Magistrate Judge Strauss. [ECF No. 34.]   On May 13, 2020, Magistrate Judge Strauss issued the Report recommending that the Court deny Defendant's Motion without prejudice pending a bench trial to determine whether Plaintiff visited the Website in question.   *See generally* Report.   Magistrate Judge Strauss reasoned that the question of whether the parties agreed to arbitrate was appropriately before the Court (rather than an arbitrator), but deferred to the arbitrator on the question of whether Defendant is a third-party beneficiary able to enforce the agreement.   *Id*. at 7-10.   The Report then concluded that the Website's design and language was sufficient as a matter of law to bind visitors to the terms and conditions.   *Id*. at 13-16.

Thus, Magistrate Judge Strauss found that whoever visited the Website and clicked

"Continue" assented to the Terms and Conditions, which included the arbitration provision.   *Id.* at 15-16.   However, Magistrate Judge Strauss found that there was a genuine issue of material fact regarding whether Plaintiff was that person, recommending the Court conduct a bench trial to make that determination given that Plaintiff waived her statutory right to a jury trial on this issue under 9 U.S.C. § 4 by failing to demand a jury trial.   Report at 16-17.

Plaintiff filed her Objections to the Report on May 26, 2020.   Plaintiff objects only as to Magistrate Judge Strauss's conclusion as a matter of law that the Website's design and language was sufficient to bind visitors to arbitration, arguing that the Report erred by restricting its analysis to Florida contract law, skirting more on-point precedent for less persuasive precedent, and failing to draw reasonable inferences in its favor as the non-movant.   Obj. at 5-10.

## II.   <u>LEGAL STANDARDS</u>

### A.  *Review of Report and Recommendations*

The Court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).   Those portions of the Report to which objection is made are accorded *de novo* review so long as those objections "pinpoint the specific findings that the party disagrees with."   *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3).   Any portions of the Report to which no specific objection is made are reviewed only for clear error.   *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.,* 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001)*; accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).   Plaintiff objects to the Report only "to the extent that Magistrate Judge found as a matter of law that the website through which Defendant Royal Seas Cruises, Inc. claims to have obtained Plaintiff's consent used language sufficient to manifest assent to automated calls."   Obj. at 1.

Consequently, that is the sole issue the Court will review *de novo*.   The Court has reviewed the Report in all other respects for clear error and is satisfied that no such error exists.

### B. Procedural Framework

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforceability of an arbitration agreement.   That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute.   *See id*. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). "Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chamlee v. Jonesboro Nursing and Rehab. Ctr., LLC*, No. 1:18-cv-05899-ELR, 2019 WL 6042273, at *1 (N.D. Ga. Aug. 14, 2019) (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)).

"If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."   9 U.S.C. § 4.   When determining if the making of an arbitration agreement is in issue, the Court applies a "summary judgment-like standard" and consequently "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement."   *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).   "A Plaintiff can raise a genuine issue of fact regarding the validity of an arbitration agreement by (1) making an unequivocal denial that there was an agreement, and (2) producing evidence to substantiate the denial."   *Hilton v. Fluent*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018) (citation and internal quotations omitted).   This determination is

to be made solely by the Court with no thumb on the scale towards finding a valid arbitration agreement, so "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (citation omitted).

### C. State Contract Law

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted); *see also Dasher*, 745 F.3d at 1116 ("[W]hen determining whether an arbitration agreement exists, 'courts generally should apply ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Plaintiff contends that Magistrate Judge Strauss erred in applying Florida law to the issue of contract formation, arguing that "no consideration was made in the Report as to whether Florida law should, in fact, apply to this case." Obj. at 4. That is incorrect. Magistrate Judge Strauss expressly considered the issue and concluded that although "[n]either party addressed which state's laws should apply to the contract formation issues[,] . . . it is proper to apply the law of the forum state (Florida) because the parties have not identified any conflict of law." Report at 5 n.1.

Florida law governs this dispute. As an initial matter, the Court need not consider this issue because it was not raised before Magistrate Judge Strauss. The Eleventh Circuit has held that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). District courts strongly disfavor considering arguments not presented to the magistrate judge because "it would be fundamentally unfair to permit a litigant to set its case in

motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Id.* at 1291-92 (quoting *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988)). Those fairness concerns ring especially true here; not only did neither party suggest to Magistrate Judge Strauss that any other state's law should apply, but Plaintiff, who now argues that the analysis should not be restricted to Florida law, explicitly relied on Florida law in its arguments before Magistrate Judge Strauss. *See* Response in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's Class Action Complaint at 11 [ECF No. 26] (arguing that "[u]nder Florida law, a party may qualify as a third-party beneficiary . . ."). Thus, the Court exercises its discretion to decline Plaintiff's argument that the analysis should not be limited to Florida law.

Nevertheless, even if the Court *were* to consider the argument, Magistrate Judge Strauss correctly applied Florida law to this dispute. Not only did Plaintiff not suggest that Florida should not apply, but even in her objections, Plaintiff has yet to identify *which* state's law should apply or, more importantly, any conflict between Florida law and the laws of Ohio and New York (the two other states' laws that Plaintiff suggests might apply). Indeed, Plaintiff arguably concedes that no such conflict exists. *See* Obj. at 5 ("Despite any confusion as to which state law should apply, the resulting analysis should not change. The basic elements of contract formation remain the same . . . ."); *id.* at 6 ("In Florida, the key elements of internet contract formation are notice and manifestation of assent. These elements are hardly unique to Florida law. . . . These elements are generally required across the country.") This is fatal to her argument that Florida law does not apply. *See Nationmotor Club Inc. v. Stonebridge Cas. Ins. Co.*, No. 10–CV–81157, 2013 WL 6729664, at *11 (S.D. Fla. Oct. 29, 2013) ("Because the laws are the same regarding the disputed issues and because both parties rely on Florida law in their briefs, the Court will apply Florida law,

too."); *id.* ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state . . . .") (citation omitted); *see also Chance v. Am. Inst. of Toxicology, Inc.*, No. 6:14-cv-1042-Orl-28KRS, 2015 WL 13792222, at *4 n.5 (M.D. Fla. Sep. 22, 2015) ("In their briefs the parties rely exclusively upon Florida law to address whether the parties mutually assented to the [] Agreement.   Therefore, it appears that the parties agree that Florida law governs this issue.   Nevertheless, to the extent that an issue arises as to whether Florida law or Indiana law applies to the issue of mutual assent, the Court discerns no conflict between Florida and Indiana law.   Consequently, the Court will apply the law of the forum, and Florida law will apply.") (citations omitted).

### III.  <u>ANALYSIS</u>

This dispute turns on whether the Website's design was sufficient as a matter of law to lead to the formation of a contract by clicking the "Continue" button.   Plaintiff's Objection alleges three errors in the Report: 1) the Report erroneously restricted analysis of Plaintiff's claims to Florida contract law; 2) the Report improperly relied on *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018) in lieu of *Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019); and 3) the Report failed to draw all reasonable inferences in Plaintiff's favor.   Because the Court has already addressed the first of these alleged errors, *see* Section II.C, *supra*, it will address the next two in turn.

#### A.  *The Report Properly Relied on Applicable Precedent*

Plaintiff insists that the Report should have agreed with and relied on *Anand*, a case decided by the Northern District of Illinois applying Illinois law.   There, the court examined a website design that was "virtually indistinguishable from the design at issue here," Report at 14, and found that the design was insufficient as a matter of law to create a binding contract, *Anand*, 2019 WL 2716213, at *3 (finding plaintiff "was not placed on reasonable notice that she was manifesting

assent to the terms and conditions by clicking the 'Continue' button").      In *MetroPCS*, on the other hand, the Third District Court of Appeal of Florida laid out the proper analysis under Florida law as to electronic contract formation and ruled that a hyperlink to a wireless telephone service company's terms and conditions in monthly text messages to a cellphone user was sufficiently conspicuous to render those terms and conditions enforceable.    273 So. 3d at 1028-29.

As explained above, Magistrate Judge Strauss correctly concluded that Florida law applies in this case.    Thus, the Report correctly concluded that it "must follow *MetroPCS* in applying Florida law."    Report at 15.    This is because "[a] federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.    We are so bound regardless of whether we agree with the intermediate state appellate court's reasoning or the outcome the decision dictates."    *Williams v. Singletary*, 78 F.3d 1510, 1515 (11th Cir. 1996) (applying the decision of the Third District Court of Appeal of Florida).    Plaintiff has raised no argument that the Florida Supreme Court would decide the contractual issue otherwise, and there is no indication that *MetroPCS* is not applicable authority under Florida law.    Thus, even assuming Plaintiff were correct that *MetroPCS* erred in its analysis, the Court remains bound to adhere to it.

Applying *MetroPCS* to the facts of this case, the Report came to the correct conclusion. The court in *MetroPCS* explained that "[a] 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process.    The purchaser can complete the transaction without visiting the page containing the terms and conditions."    273 So. 3d at 1028 (citing *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017)).    These agreements are in contrast to "clickwrap" agreements, which "occur[] when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they

have read those terms and conditions."  *Id.*  Most important to the analysis here, "'browsewrap'
agreements have only been enforced when the purchaser has actual knowledge of the terms and
conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a
reasonably prudent person on inquiry notice" of the terms and conditions, such that continued use
of the service constitutes assent to the terms and conditions.  *Id.*  Significantly, in concluding
that the hyperlink in the text messages was sufficiently conspicuous to render the agreement
enforceable, *MetroPCS* did not require an explicit statement informing the user that his use of the
service, or any other act on behalf of the user, would constitute acceptance and render the
agreement enforceable.

The Website design here is clearly of the "browsewrap" variety, as no direct
acknowledgement that the user has read the Terms and Conditions is required to proceed to the
next page.  And although Plaintiff avers that she did not have actual knowledge of the Terms and
Conditions, the Website's design is such that the hyperlink to the terms and conditions is
sufficiently conspicuous to put a reasonably prudent user on inquiry notice of the terms of the
contract.  The sentence regarding the applicability of the Terms and Conditions, which includes
a hyperlink to the Terms and Conditions and is placed directly above the "Continue" button that
any user must click to proceed with using the website, reads: "I understand and agree to email
marketing, the Terms & Conditions which includes mandatory arbitration, and Privacy Policy."
Because it is nearly impossible that any user would not see that statement before hitting
"Continue," this design is a far cry far from those wherein "the hyperlink to the terms and
conditions is buried at the bottom of the page, and the website never directs the user to review
them[,]" which have been repeatedly deemed to provide insufficient notice under Florida law.
*Vitacost.com, Inc.*, 210 So. 3d at 765.

In addition, a reasonable person would understand that by clicking "Continue" directly under a sentence that begins "I understand and agree . . .[,]" the user is assenting to the statements or conditions that follow.   The affirmative act of clicking the "Continue" button presents at least as much, if not more, compelling evidence of assent than that which was present in *MetroPCS*, where the court held that the appellee's mere "continued use of the company's services" after receiving the text messages with the hyperlinked terms and conditions constituted assent.   273 So. 3d at 1028 n.1.   Although Plaintiff takes issue with the less stringent requirements for assent in *MetroPCS* as compared to *Anand*, for the reasons explained above, it is not appropriate for this Court to second-guess the Florida courts on issues of Florida state law.

The Court therefore concludes that the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice of the Terms and Conditions, and clicking "Continue" directly below the relevant statement is sufficient to constitute assent to the Terms and Conditions.   Consequently, there is no genuine dispute of material fact as to whether the person who clicked "Continue" on the Website assented to the Terms and Conditions, which included mandatory arbitration.

### B. The Report Properly Drew Reasonable Inferences in Plaintiff's Favor as the Non-Movant

Plaintiff further objects to the Report by arguing that it did not adhere to the summary judgment-like standard that is applied to the determination of whether the parties agreed to arbitrate the dispute.   Specifically, Plaintiff argues that "on the issue of the website design and any manifestation of assent, Magistrate Judge Strauss resolved his doubts about sufficiency in favor of Defendant . . ., rather than Bell," and that "[s]uch resolution runs contrary to the law."   Obj. at 8-9.

This argument misconstrues the summary judgment standard by insisting that Plaintiff, as the non-movant, was entitled to have reasonable inferences about the law—rather than the facts—

drawn in her favor.   "At the summary-judgment stage, we view the material presented and draw all *factual* inferences in the light most favorable to the nonmoving party."   *Jarvis v. GeoVera Specialty Ins. Co., Inc.*, 733 F. App'x 468, 470 (11th Cir. 2018) (citing *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213-14 (11th Cir. 2015)) (emphasis added); *see also Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("In assessing whether the movant has met this burden, the courts should view the evidence and all *factual* inferences therefrom in the light most favorable to the party opposing the motion.   All reasonable doubts *about the facts* should be resolved in favor of the non-movant.") (citation omitted) (emphases added).

As the non-movant, Plaintiff is entitled to have all reasonable factual inferences drawn in her favor, but that plainly does not apply to the question of whether the website design was sufficient to create a binding agreement to arbitrate because "[a] determination of the existence of a valid contract is a question of law for the court."   *GEICO Indem. Co. v. Boike*, No. 06-cv-80219, 2006 WL 8435399, at *1 (S.D. Fla. Nov. 9, 2006) (citing *Acumen Constr., Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. 2d DCA 1993) and *Caltagirone v. Sch. Bd. of Hernando Cty.*, 355 So. 2d 873 (Fla. 2d DCA 1978)); *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) ("The determination of whether parties have contractually bound themselves to arbitrate a dispute—a determination involving interpretation of state law—is a legal conclusion . . . The central issue—whether, based on the factual findings, a binding contract existed—is a question of law that we review *de novo*.") (Sotomayor, J.) (internal citation omitted).

Plaintiff argues that Magistrate Judge Strauss erred by noting "disagreement" with other cases because, in her view, that necessarily means there is "a level of legal or factual uncertainty." Obj. at 10.   But such a position would mean that summary judgment would be precluded in any

area of the law in which judges have come to different conclusions, which is clearly at odds with the summary judgment standards dictated by the Supreme Court and the Eleventh Circuit.

As Plaintiffs concede, on the appropriate *factual* questions—namely, whether Plaintiff or someone authorized by Plaintiff actually visited the Website—the Report does draw all reasonable inferences in Plaintiff's favor.   But because the question of whether a binding agreement to arbitrate the dispute is a legal determination, Plaintiff was not entitled to have reasonable inferences drawn in her favor in this regard.   Accordingly, the Report appropriately applied the summary judgment-like standard in its analysis.

## IV.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Report [**ECF No. 42**] is **AFFIRMED AND ADOPTED** as supplemented herein.

2.   Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Class Action Complaint [ECF No. 16] is **DENIED without prejudice**.

3.   A bench trial will be held pursuant to 9 U.S.C. § 4 to determine the limited issue of whether Plaintiff, or someone authorized by Plaintiff, visited the website in question and clicked "Continue" on September 11, 2018 at approximately 11:09 a.m. EST.   These proceedings will commence on **Tuesday, October 27, 2020 at 10:00 AM**, in Fort Lauderdale, Florida.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 21st day of September, 2020.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:      Counsel of record
         Magistrate Judge Jared M. Strauss